UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DAVID KOSOFSKY and
RUSALYN KOSOFSKY                                                PLAINTIFFS

vs.                       CASE NO. 13-3020

MELVIN BYLER,
ANGELA BYLER, and
FLYING B RANCH, LLC                                             DEFENDANTS

MEMORANDUM OPINION AND ORDER

    On the 25th day of August, 2014, the above captioned matter came on for a bench trial before the Court.  Plaintiffs, David Kosofsky and Rusalyn Kosofsky, appeared in person and were represented by counsel.  Defendants, Melvin Byler, Angela Byler and Flying B Ranch, LLC, also appeared in person and were represented by counsel.  From the testimony of witnesses, the documents received into evidence, and the arguments of counsel during trial and through post-trial briefs, the Court finds and orders as follows:

    1.    Plaintiffs, David and Rusalyn Kosofsky ("plaintiffs" or "Kosofskys"), commenced this lawsuit on January 30, 2013, seeking a declaratory judgment that they are the rightful owners of two tracts of real property located in Searcy County, Arkansas, and that the defendants, Melvin and Angela Byler ("defendants" or "Bylers"), have not acquired ownership of that property by adverse possession.  They also assert claims for trespass and ejectment.

    2.    In response, the Bylers denied plaintiffs' assertions and

1

filed a counterclaim wherein they alleged that they have obtained ownership of at least some of the property at issue based on theories of boundary line by acquiescence, adverse possession, and prescriptive easement.

3. On December 24, 2013, plaintiffs filed an amended complaint naming Flying B Ranch, LLC as an additional defendant and setting forth the same claims as the original complaint.

## FINDINGS OF FACT

4. Based on the evidence presented at trial, the Court makes the following findings of fact:

\* During the period extending from 2006 through 2008, the Kosofskys purchased 77 acres of real property in Searcy County, Arkansas. This property will be referred to as "Property A".

\* County Road 25 and a creek both run through Property A.

\* Within Property A there are two smaller sections of land, identified as "Area 1" and "Area 2". Area 1 and Area 2 are the portions of Property A that are north of County Road 25 and through which the creek runs. The legal descriptions of said Area 1 and Area 2 are as follow:

^ Area 1:

**The Southeast Quarter of the Northeast Quarter of Section 20, Township 17 North, Range 18 West, LESS AND EXCEPT the Following described Tract, to-wit: The West 350.00 feet of the Southeast Quarter of the Northeast Quarter, lying North of existing County Road, Section 20, Township 17 North, Range 18 West, Searcy County, Arkansas, as per West line of said Southeast Quarter of the Northeast Quarter**

2

>    **based on a survey by Dale Lipps for Joe Rockhold, dated June 3, 1989, and revised December 21, 1989. Subject to existing easements, rights of ways and any property line that has been previously established by a Court of Law.**
>
>    **Also, the Southwest Quarter of the Northwest Quarter of Section 21, Township 17 North, Range 18 West, LESS AND EXCEPT 3 acres in the Northeast corner of said forty being described as all that part lying Northeast of where the public road now runs, being part of the Southwest Quarter of the Northwest Quarter of Section 21, Township 17 North, Range 18 West.**
>
>    ^ Area 2:
>
>    **The West 350.00 feet of the Southeast Quarter of the Northeast Quarter, lying North of the existing County Road, Section 20, Township 17 North, Range 18 West, Searcy County, Arkansas, as per West line of said Southeast Quarter of the Northeast Quarter based on a survey by Dale Lipps for Joe Rockhold, dated June 3, 1989, and revised December 21, 1989. Subject to existing easements, rights of ways and any property line that has been previously established by a court of law.**

   *   Flying B Ranch, LLC owns approximately 49 acres North of Property A.

   *   Flying B Ranch, LLC is an Arkansas limited liability company wholly owned by the Bylers.

   *   The land owned by Flying B was previously owned individually by the Bylers and Bylers currently hold a life estate interest in the property in their individual capacities. This property will be referred to as "Property B".

   *   The same creek that runs through Property A runs through a portion of Property B.

   *   The dispute in this lawsuit centers on the defendants'

claim that the true boundary between their property and the property of the Kosofskys is a fence running along the North side of County Road 25. The defendants contend that they have taken the property North of the fence running along the North side of County Road 25 by adverse possession, boundary by acquiescence, or prescriptive easement. The property North of the fence line includes Area 1 and Area 2 of Property A.

\*   The Kosofskys contend that the true boundary between Property A and Property B is North of the fence that runs along County Road 25 and is properly described in the legal description of each deed exchanged when any portion of the property was transferred. This claimed boundary line will be referred to as the "description boundary line".

\*   Joseph and JoAnne Rockhold originally owned both Property A and Property B for many years.

\*   At some point, during the Rockhold's ownership of both properties, County Road 25 was built through Property A and a fence was erected along the North side of County Road 25.

\*   In 1988, Rockholds leased Property B to Steve Brewer.

\*   In 1991, Rockholds sold all of Property A, except for Area 2, to Gary and Linda Milam.

\*   Also in 1991, Rockholds sold all of Property B to Mr. Brewer.

\*   In January 1993, Rockholds leased Area 2 (the remaining portion of Property A still owned by them) to Jimmie Joe and Sandra

Morrison pursuant to a 52-year lease.

* In June of 1994, Mr. Brewer sold all of Property B to the Bylers.

* In 2010, Bylers transferred Property B to Flying B Ranch, LLC. The deed from Bylers to Flying B did not include any portion of Property A – specifically, it did not include any portion of either Area 1 or Area 2.

* In 2012, Flying B Ranch granted a life estate in Property B to the Bylers.

* At all times Rockholds owned Property A, they paid the real estate taxes on the property.

* When Milams owned Property A (except for Area 2), they paid all real estate taxes on the property.

* While Morrisons leased Area 2, they paid the real estate taxes on the property for the Rockholds in accordance with the terms of the Lease Agreement between the Rockholds and the Morrisons.

* In April 2006, Milams sold all of Property A, except for Area 2 (which Milams did not own and which was still owned by the Rockholds), to the Kosofskys.

* When purchasing the property, the Kosofskys walked the property with a realtor -- including the area north of County Road 25 by the creek.

* On several occasions, Mr. Kosofsky placed some posted signs; marked trees on Area 1 and Area 2 with purple paint; and had Property A surveyed.

* Kosofskys have paid all real estate taxes on the real estate comprising Property A from and after the times they acquired legal title to each portion of it.

* After Kosofskys purchased Property A (except for Area 2), Mr. Kosofsky spoke with the Bylers on the telephone in 2007, and, after the telephone conversation, Kosofskys and Bylers exchanged a number of email messages concerning the construction of a fence and a survey of the property.  These conversations and messages related to the placing of a fence along the description boundary line and did not relate to the existing fence along the North side of County Road 25.

* During the email exchange, Mr. Kosofsky stated to the Bylers: "As discussed on the telephone, Rusalyn and I will continue to grant permission for your cows to come on to our property while you and I plan and build the fence. . . ."

* By 2008, both the Rockholds had died.  Their heirs then filed a quiet title lawsuit in the Circuit Court of Searcy County, Arkansas to quiet title to Area 2 in their favor.

* Bylers did not participate in the quiet title action.

* The Circuit Court of Searcy County found that all requirements for a quiet title action had been satisfied and quieted title in the heirs of the Rockholds.

* Later in 2008, the Rockholds' heirs sold to the Kosofskys Area 2 of Property A.

* After Kosofskys purchased Area 2, Mrs. Morrison, on behalf

of herself and her late husband, terminated the 52-year lease agreement on Area 2 in return for a payment of consideration from the Kosofskys.

* In April of 2008, Mr. Kosofsky obtained a survey of Property A. The survey results showed the boundary line between Property A and Property B as it is shown on the legal description in the deeds -- the description boundary line.

* Mr. Byler testified that he was aware of the survey and that he spoke to the surveyors when it was being done.

* In January of 2013, Mr. Kosofsky had a face to face meeting with Mr. Byler. During that meeting, Mr. Kosofsky attempted to revoke permission for Mr. Byler's cattle to be on his property and, in response, Mr. Byler told Mr. Kosofsky that he had taken some of Property A by adverse possession.

* Mr. Brewer testified that he showed Mr. Kosofsky what he considered to be the boundary between Property A and Property B and that boundary was consistent with the survey boundary line. The Court notes and the survey boundary line and the description boundary line are the same.

* Mr. Brewer testified that he did not consider County Road 25 to be the boundary between Property A and Property B.

* Mr. Brewer testified that Mr. Rockhold never told him that County Road 25 was the boundary between Property A and Property B.

* Mr. Brewer kept cattle on Property B.

* Mr. Brewer allowed his cattle to cross the survey boundary

7

line and enter Property A.

* Mr. Brewer testified that he had a "neighborly understanding" with Mr. Milam that he could keep cattle on Area 1 of Property A.

* Mr. Brewer also testified that he felt he had permission from the Morrisons and Rockholds to allow his cattle on Property A.

* Mr. Brewer testified that he showed Mr. Byler the true property lines (including the survey boundary line) when he sold Property B to the Bylers.

* Mr. Brewer testified that he never intended to adversely possess any of Property A.

* Mrs. Morrison testified that Mr. Byler asked her for permission to run cattle in Area 2 of Property A and that she gave him such permission as long as he kept the fence up.

* Mrs. Morrison testified that Mr. Byler never claimed to own Area 2 of Property A.

* In deposition testimony which was presented in evidence, Mr. Milam testified that he believed the surveyed property line to be the accurate boundary of Property A.

* Mr. Milan said that he had a conversation with Mr. Byler during which he gave Mr. Byler permission to allow cattle on Property A (with the exception of Area 2).

* Mr. Milam stated that Mr. Byler once offered to purchase Property A (except for Area 2) from him but he told Mr. Byler that the property he owned was not for sale.

8

*   Mr. Byler testified that he hasn't tried to keep the Kosofskys out of the disputed property.

*   On separate occasions, Mr. Byler offered to purchase all or part of the disputed property from both Mr. Milam and Mr. Kosofsky.

*   Bylers kept the fence along County Road 25 in repair throughout their use of the dispute property.

*   In addition to running cattle on the disputed property, Bylers have cleared brush on it; have mowed some of it; and have maintained a herd of goats on it.

*   The Court finds the testimonies of Steve Brewer, Gary Milam and Sandra Morrison are credible, consistent and supportive of David Kosofsky's claims and testimony. In areas wherein the testimonies of Mr. Byler and Mrs. Byler conflict with the testimonies of the foregoing witnesses, the Court credits and believes the other witnesses.

**CONCLUSIONS OF LAW**

**ADVERSE POSSESSION**

5.  Under Arkansas law, to prevail on a claim of adverse possession a claimant must satisfy both common-law and statutory elements. <u>Parkerson v. Brown</u>, 430 S.W.3d 864 (Ark. App. 2013).

To prove the common-law elements of adverse possession, the claimant must establish that his possession was actual, open, notorious, exclusive, hostile in character, accompanied by an intent

to hold adversely against the true owner, <u>and</u> continued for seven years.

In addition, in 1995, the General Assembly added, as a requirement for proof of adverse possession, that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years.[1]  A.C.A. 18-11-106.

6.   Based upon the evidence and the Court's assessment of the credibility of the witnesses, the Court finds that the Bylers' use of the disputed property was permissive and further concludes that defendants have not met the requirements necessary to establish title to the disputed property by adverse possession.

## ACQUIESCENCE

7.   According to Arkansas law, "[a] fence, by acquiescence, may become the accepted boundary even though contrary to the survey line.  The general rule is that, when adjoining landowners silently acquiesce for many years in the location of a fence as the visible evidence of the division line and thus apparently consent to that line, the fence line becomes the boundary by acquiescence." <u>Boyette v. Vogelpohl</u>, 214 S.W.3d 874, 878 (Ark. App. 2005).  *See also* <u>Summers v. Dietsch</u>, 849 S.W.2d 3 (Ark. App. 1993).

While there must be agreement to the acceptance of a boundary line, the agreement need not be an express agreement – rather, it "'may be inferred by the action of the parties.'" <u>Id</u>. quoting

---

[1] If the claimant's rights to the disputed property vested before 1995, he need not comply with the 1995 statutory change.  <u>Sutton</u>, 387 S.W.3d 185 (Ark. App. 2011).

10

Kittler v. Phillips, 437 S.W.2d 455, 456 (Ark. 1969).

8.  The Court is not persuaded by the evidence presented that anyone other than Mr. Byler ever acquiesced -- silently or otherwise -- to the notion that the fence along County Road 25 had become the new boundary between Property A and Property B.

The evidence contains nothing to support a conclusion that the actions of any previous record landowner of Property A resulted in acquiescence to the notion that the fence along County Road 25 had become the new boundary line between Property A and Property B.

It seems clear that everyone other than Mr. Byler believed and acted upon the notion that his use of portions of Property A was by permission.  Mr. Byler never suggested otherwise until Mr. Kosofsky attempted to withdraw that permission.  Thus, the Court sees no basis for a finding that there was any silent agreement -- in which anyone acquiesced -- to establish the boundary claimed by Bylers.

**PRESCRIPTIVE EASEMENT**

9.  A prescriptive easement is acquired in a manner similar to adverse possession.  Horton v. Taylor, 422 S.W.3d 202, 206 (Ark. App. 2012).

Permissive use of an easement "cannot ripen into an adverse claim without clear action, which places the owner on notice." Roberts v. Jackson, 384 S.W.3d 28, 31 (2011).

10. As discussed with respect to Bylers' adverse possession and acquiescence claims, the permissive nature of the defendants' use of the property likewise prevents them from meeting the

11

requirements for establishing a prescriptive easement.

Additionally, the size of the disputed property does not lend itself to a taking through prescriptive easement but, rather, is more consistent with the fact that Bylers were being allowed to use the disputed property, and the creek running through it, by permission of the rightful owners thereof.

11. It follows, therefore, that the Court finds no merit in defendants' claims based upon adverse possession, acquiescence or prescription and concludes that plaintiffs are entitled to a declaratory judgment that they are the legal and rightful owners of Property A –- including both Area 1 and Area 2.

IT IS, THEREFORE, CONSIDERED ORDERED ADJUDGED AND DECLARED:

* that defendants' claims based upon adverse possession, acquiescence and prescriptive easement are without merit and that they should be, and hereby are, dismissed with prejudice; and

* that plaintiffs are the legal and rightful owners of the disputed two tracts of real property located in Searcy County, Arkansas –- being Area 1 and Area 2 of Property A as identified in the text of this opinion – and they are entitled to the immediate possession of said two tracts. It is so declared.

IT IS SO ORDERED this 1st day of October, 2014.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE